IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

LAVETA J. TIBBETT                                                    PLAINTIFF

v.                              NO.  1:04CV00088 JWC

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                     DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff, Laveta J. Tibbett, appeals the denial of her claim for Disability Insurance Benefits (DIB). The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater,* 108, F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1] "substantial evidence on the record as a whole" requires more scrutiny.

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

Plaintiff's application alleged disability due to fibromyalgia with chronic fatigue syndrome, arthritis, migraine headaches, anxiety and hypertension. She alleged an onset date of June 20, 2002. An Administrative Law Judge (ALJ) heard her claim on September 3, 2003, and rendered his decision on March 24, 2004. At the time of the decision, Plaintiff was fifty-one years old, had a high school education and past relevant work experience as a medical receptionist, which is classified as sedentary and semi-skilled. The ALJ found

---

[1] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

that while Plaintiff was insured for benefits through the date of his decision, she was not disabled within the meaning of the Social Security Act at any time through that date.

The ALJ utilized the required five-step sequential analysis. 20 C.F.R. § 404.1520. At step one, he found that Plaintiff had not engaged in substantial gainful employment since her alleged onset date. At step two, he found Plaintiff's fibromyalgia, migraine headaches and high blood pressure to be "severe" within the meaning of the Social Security Regulations. He also determined that Plaintiff's alleged mental impairment (depression and anxiety) was not "severe." At step three, he found that Plaintiff's impairments did not meet or medically equal, either singly or in combination, any impairment listed in Appendix 1, Subpart P, Regulations No. 4. At step four, he found that Plaintiff had the Residual Functional Capacity (RFC) to perform sedentary work.[2] At the hearing, a vocational expert testified that the job of medical receptionist was sedentary, semi-skilled work and that based on the RFC, Plaintiff could return to her work as a medical receptionist as she performed it and as it was performed in the national economy. Relying on this testimony, the ALJ held that Plaintiff could return to her past relevant work and found her "not disabled" at step four of the sequential analysis.

Plaintiff makes two basic arguments for reversal. First, she says the ALJ improperly discounted the opinions of the treating physicians, Michael T. Pilcher, M.D., an internal medicine specialist, and Laura Trigg, M.D., a rheumatologist. Second, she argues that the ALJ's credibility analysis was flawed. She argues that because of these errors, the ALJ's RFC finding and determination that she could perform her past relevant work are unsupported by substantial evidence.

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing are often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

**Discounting of Treating Physicians' Opinions**

Dr. Pilcher, who has treated Plaintiff extensively for several years, completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical).[3] This was apparently on request of the agency and on a form supplied by it. Key findings were that Plaintiff could lift less than five pounds for less than an hour and should avoid handling even five pounds or under and all heavier weights; should avoid fine manipulation such as typing or operating a cash register; should avoid [a long list] of environmental conditions; that she could stand and/or walk less than one hour cumulatively in a work day; and that her medication would affect her ability to maintain attention and concentration or to remain alert during a normal eight-hour workday. It is clear that if this opinion were given controlling weight, it would follow that Plaintiff would not be able to perform a full range of sedentary work and most likely could not perform substantial gainful employment at all.

Dr. Trigg, a treating rheumatologist, had seen Plaintiff fewer times, but was also a treating physician. She submitted a Fibromyalgia Report, again at the request of, and on a form supplied by, the agency. Her submission showed pain at the typical trigger points for fibromyalgia. Dr. Trigg noted severe fatigue and limited stamina, as well as dryness and nausea as side effects of medication. The form concludes with the question, "On the basis of all of the clinical and laboratory information available to you would your patient **reliably and consistently** be able to complete a normal work day of eight hours and a week consisting of five days without being absent four days out of a month?" Dr. Trigg answered, "no."

The ALJ's opinion correctly stated the law as to the weight to be given the opinions of treating physicians. Basically, such an opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques, and it is not

---

[3] Tr. 210-212.

inconsistent with other substantial evidence in the record. The weight to be given is evaluated on the basis of four factors: whether the opinion is from a treating physician; whether it addresses the nature and severity of the impairment; whether it is well supported; and, whether it is consistent with the other substantial evidence in the patient's record. In addition to these factors, courts have considered the duration and extent of treatment and whether the physician is a specialist. As the ALJ stated, SSR 96-2p stresses that a medical opinion need not necessarily be fully supported by the evidence. Whether an opinion is well supported depends on the facts of each case. As the ALJ also acknowledged, "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not satisfy the test for controlling weight."

The ALJ did not question the diagnosis of fibromyalgia. He obviously did not give great weight to the physicians' opinions as to functional limitations, as he found Plaintiff capable of performing the full range of sedentary work.

The ALJ discounted the opinions for several reasons. The first was that he did not find Plaintiff to be credible in her subjective complaints. This was based in large part on the ALJ's attitude regarding the business arrangement that Plaintiff's husband had created, forming a corporation and showing her to be a majority owner in order to obtain an advantage in obtaining government contracts. As will be discussed below in the discussion of the credibility analysis, the ALJ was obviously offended by this and appeared to give potentially undue weight to it. The business arrangement would not, in itself, be a valid reason for discounting the opinions of the two treating physicians. Their opinions would be based on their experience and medical observations, not merely on the history and complaints given by Plaintiff. The Court recognizes that a fibromyalgia diagnosis is often made on the basis of subjective complaints for which there is no ready clinical explanation. Nevertheless, the treating physicians are in the best position to determine whether the

complaints are genuine.

A second reason given by the ALJ in discounting the opinions was that Dr. Pilcher's records did not reflect formal testing with weights or other measurement tools to substantiate his opinion as to the amount of weight Plaintiff could lift, or to substantiate other findings. A review of the form report shows that it requires the physician to substantiate his opinion by indicating at the end of each section the medical/clinical findings that support it. He did not do so. However, deciding the issue of impairment in a case involving fibromyalgia presents special difficulties. Although it is a recognized condition, there is, by definition, an absence of objective findings to explain the pain and fatigue experienced by the patient. The ALJ agreed that the diagnosis itself was supported. Although the records do not reflect objective testing, there is nothing in the record which indicates such testing is valid or even possible in the case of a patient with fibromyalgia. The Court doubts whether the ALJ is aware whether or not there would be any objective way to measure Plaintiff's pain, strength or other alleged limitations. In such a case, it would seem that the experience, specialization and extent of treatment of the physician would be of greater significance. As to Dr. Trigg's opinion, the form presented to her does not mention the necessity of indicating medical or clinical findings substantiating her opinion. She cannot be faulted for failing to do so.

The ALJ also pointed to the fact that Plaintiff underwent a course of physical therapy which resulted in Plaintiff's reaching eighty percent of the stated goal of reducing pain. However, as Plaintiff points out, this was done two years before the alleged onset date and the medical record shows extensive problems and treatment during the relevant period. The record is silent as to why physical therapy was not utilized during the period in question in this case. This factor is not a valid reason for discounting the treating physicians' opinions.

The ALJ discussed the fact that Dr. Pilcher's recitation of side effects such as

inability to maintain concentration was not supported by the records because there were no notations of such side effects in those treatment records. Plaintiff was staying at home and resting most of the time during the relevant period. An inability to maintain concentration and attention and to remain alert would not be especially significant to her or to the doctor. Plaintiff was not working during the relevant period of time. The failure to note common but not especially serious side effects does not necessarily lead to the conclusion that the doctor was exaggerating their impact on the patient.

In this case, there are opinions from two treating physicians. Both are specialists. Their opinions are essentially consistent with each other. Dr. Pilcher saw Plaintiff on a regular basis for several years. Fibromyalgia is a condition with few objective symptoms. Those factors should have been taken into greater account.

The fact that the ALJ did not accept these opinions raises a more basic problem as well. There was no countervailing medical evidence from treating or examining physicians in the record. The only other evidence bearing on Plaintiff's RFC was an evaluation from a non-treating, non-examining agency physician.[4] His evaluation varied widely from even the ALJ's assessment. A non-treating, non-examining physician's opinion as to functional limitations is not substantial evidence. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir.2000); *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 2000). Thus, there is no substantial evidence in the record supporting the ALJ's finding that Plaintiff could perform a full range of sedentary work. Such evidence is a necessity. *Dykes v. Apfel*, 223 F.3d 865 (8th Cir.2000); *Nevland , supra,* at 858.

This case must be remanded for further consideration. However, it is not entirely clear that the treating physicians' opinions should be controlling. The Court will not, therefore, direct an award of benefits at this time. On remand, the ALJ should reconsider

---

[4] Tr. 129-136.

the opinions of Drs. Trigg and Pilcher. If he still proposes to accord them less than controlling weight, he must give the doctors the opportunity to provide medically acceptable clinical or laboratory support or the opportunity to further explain their opinions and explain why it is impossible to further document the basis for their conclusions. That will give him a better basis on which to determine the weight that should be given to the opinions. The ALJ may also wish to obtain a consultation and examination with an independent physician on the issue of Plaintiff's ability to perform work related activities. In any event, he must be careful to insure that his findings as to Plaintiff's RFC are supported by substantial medical evidence.

### Credibility Determination

On remand, the ALJ should also reconsider the issue of Plaintiff's credibility. The ALJ was obviously offended by the fact that the family business was set up with her holding a controlling interest so as to obtain an advantage in getting government contracts. He discussed it at two points in his opinion. He referred to the "peculiar" testimony on the issue. At the hearing, after learning from Plaintiff's husband that she was a "figurehead" to make it easier to win government contracts, the ALJ made the statement, "They have terms for that, but go ahead," indicating that he thought the situation was fraudulent. It may well be that this is a legitimate credibility factor, but if the ALJ is going to give major weight to the manner in which Plaintiff and her husband set up a family corporation and business, he should inquire further into the situation. Family corporations often list a nonparticipating member as an officer. If the company was legitimately set up with Plaintiff owning a controlling interest, she would be considered the owner. It may well be that there is nothing illegitimate about such an arrangement, especially where the wife is a member of the household and will in part reap the benefits of any business income.

The ALJ should also more fully discuss other credibility factors as set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). It is true, as Defendant argues, that the ALJ is

not required to discuss each factor. However, where credibility is crucial, as it is in a fibromyalgia case, he should make it clear that he truly has considered all factors. One factor that would seem especially important here is Plaintiff's work record, which appears to be good and would support her credibility. ALJs often ignore this consideration, yet it is especially probative to determine whether the person has avoided employment all her life or has apparently worked for years, as Plaintiff has done here, despite her long-standing condition of suffering from migraine headaches. Her work for the last several years was part time, but this factor remains important and should be taken into account and discussed.

While the ALJ mentioned letters indicating that Plaintiff has become increasingly less involved in the community and church and appears to be in pain, he did not say whether he gave them any weight at all. The letters are from friends and pastors who would have no secondary gain motive. While they may be trying to help a friend and community member, the ALJ should discuss the weight to which he feels they were entitled.

Finally, the ALJ characterized Plaintiff's medical treatment as not extensive. However, she was seeing Dr. Pilcher every two to three months and Dr. Trigg every six months. She was taking extensive medication. The fact that the doctors were not able to offer her more aggressive treatment is not necessarily indicative of lack of disabling pain and fatigue. If the ALJ is going to count this factor against her credibility, he should, on remand, determine whether alternative treatment modes were even available and if so, why they were not utilized.

## **Conclusion**

The Court finds that it must agree with Plaintiff's contention that undue weight may have been placed on Plaintiff's business arrangement and that this affected both the RFC determination and the credibility determination. The RFC determination lacks the support

of substantial medical evidence and there was error in the credibility evaluation.

THEREFORE, the Commissioner's determination is reversed and the case is remanded for further proceedings consistent with this opinion.  This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 23rd day of March, 2006.


_____
UNITED STATES MAGISTRATE JUDGE